IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 22–cv–02067–NYW–MDB

ANDRE D. REED, SR.,

     Plaintiff,

v.

BILL ELDER, Sheriff of El Paso County, MICHAEL MCHENRY, 21st District, 4th Judicial
Court, ELIZABETH O'NEIL, Head of Classification, DRAPER, Deputy DTO, EPCJ,,
RAVENKAMP, Deputy, Disciplinary Hearing Officer, EPCJ,, SHAWN WITKUS, Magistrate,
Court N, 4th District Court,, NICOLE FRAHM, El Paso County Criminal Justice Center, MARK
STEVENS, El Paso County Sheriff Office, MICHAEL J. ALLEN, Colorado Springs District
Attorney, MICHELLE REED, El Paso County Sheriff's Office, EL PASO COUNTY
SHERIFF'S OFFICE SWAT TEAM/Deputies EPSO et al., KAREN CASEY PARROT,
Magistrate, 4th Judicial District, ZACHARY MARGURITE, BRIAN NULK, MACKENZIE N.
BOYNE, KATIE GASSETT, SCOTT ROBBLEE, BRANDON HALL, KYLE SHELHAMER,
CAMERON KOMROFSKE, STEVEN J. PADDACK, ANDREW PEERY, MATTHEW P.
GAW, OWEN MCCORMACK, PAUL MYNATT, MARCUS MILLER, SPENCER
STRINGHAM, SCOTT S. BRETTELL, "KATHRYN J. OTTO, JONATHAN PENNINGTON,
CHRISTOPHER DONATELL, TRAVIS MUNDT, RONNIE HANCOCK, BRENDEN
KOEHLINGER, RYAN M. GONZALES, SETH T. FRITSCHE, JASON T. GARRETT,
SHARON TRIVETTE, WILLIAM H. PROCTOR, MICHAEL ST. CHARLES,
CHRISTOPHER GONZALEZ, EVELYN R. PEAK, HENRY CRIST, MICHAEL BAIER, C.
EVANS, PSWAT L2, PSWAT, PSWAT 17, PSWAT 1, PSWAT 3, PSWAT Z6, PSWAT 5,
PSWAT 8, PSWAT 14, PSWAT 4, PSWAT ??, PSWAT Z7, PSWAT Z2, PSWAT Z21,
PSWAT Z4, PSWAT Z18, and PSWAT Z5,

     Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

This matter is before the Court on the El Paso County Defendants' Motion to Dismiss Plaintiff's Amended Complaint.[1] (["Motion"], Doc. No. 64.) Plaintiff has filed a response (["Response"], Doc. No. 71) to which Defendants have replied (Doc. No. 75). With leave of Court, Plaintiff also filed a sur-reply. (Doc. Nos. 76; 77.) After reviewing the Motion, briefing, and relevant law, the Court respectfully **RECOMMENDS** the Motion be **GRANTED**.

## SUMMARY FOR *PRO SE* PLAINTIFF

The Court recommends dismissing some of your claims and staying others, as follows:

- With respect to your first, second, fifth, eighth, and ninth claim, the Court finds those claims are intertwined with pending criminal actions in state court. If a federal court hears those claims, it runs the risk of interfering with the ongoing state court criminal proceedings. Thus, the *Younger* doctrine (explained in more detail below) bars a federal court from taking action until those state proceedings come to a conclusion. Under *Younger*, the Court recommends dismissing those claims to the extent they seek equitable relief, and staying the claims to the extent they seek monetary damages.

- With respect to your sixth claim, the Court recommends it be dismissed because the *Rooker-Feldman* doctrine (explained in more detail below) does not allow a federal court to second guess what a state court has done. Here, your claims that a restraining order was issued based on "unfounded allegations" is essentially asking a federal court to do just that—second guess what a state court has found in connection with issuing the restraining order.

- With respect to your third claim, the Court finds your allegations fail to state a claim against any specific defendant, other than Defendant Draper. And with respect to Defendant Draper, your allegations are not specific enough to state the "what, where, and how" of the claim. Thus, the Court recommends dismissal.

- With respect to your fourth, seventh, and tenth claims, even assuming all of your allegations in support of those claims are true, they are not enough to rise to the level of a constitutional violation. Thus, they cannot form the basis for individual capacity or official capacity liability, and they must be dismissed.

---

[1] Upon review of this docket, the Court determined the non-El Paso County Defendants to this matter, Defendant Judges McHenry, Witkus, and Parrot, have not been served. The Court will issue an order to show cause addressing this issue separately.

This is only a high-level summary of the Court's decision, which is set forth in full below, along with information about your right to object to this decision.

**BACKGROUND**

I.     **Plaintiff's Allegations**

Plaintiff, a pre-trial detainee at the El Paso County Criminal Justice Center ["CJC"], brings this action in connection with his prior[2] detainment and certain criminal proceedings against him. (*See generally* Doc. No. 48.) Defendants are individuals employed by the El Paso County Sheriff's Office ["EPSO"], CJC, and the El Paso County Court. (*Id.*) Plaintiff claims they have violated his constitutional and statutory rights. (*Id.*) All Defendants are sued in their individual and official capacities. (*Id.*)

In setting forth Plaintiff's allegations, the Court mirrors the claim-by-claim framework in Plaintiff's Amended Complaint. However, the Amended Complaint does not clearly specify which claims are brought against which Defendants. Where the allegations seem aimed at a particular Defendant, the Court will note it. For all other claims, the Court will construe them as brought against every Defendant. The Court also construes each of the federal constitutional claims as brought under 42 U.S.C. § 1983.

*Claim 1: Eighth Amendment Violation*

Plaintiff asserts an Eighth Amendment claim alleging cruel and unusual punishment and violations of his right to bail. According to Plaintiff, he was arrested and detained at CJC on

---

[2] Plaintiff's criminal matters related to this case are still in the pre-trial stage. Additionally, while Plaintiff was released on bond for a period, he was subsequently re-arrested on unrelated charges around November 14 or 15, 2023. (Doc. No. 64 at 6.) To the Court's knowledge, Plaintiff remains housed at CJC as of the time of this Recommendation.

February 10, 2022. (*Id.* at 8.) He alleges that on April 8, 2022, bond was set "excessively high" at $51,000, (*id.* at 9), and after being released and re-arrested on June 28, 2022, his bond was raised to $151,000. (*Id.*)

Plaintiff further alleges CJC deputies subjected him to cruel and unusual punishment by not allowing him to leave his cell "for the first eight days of being incarcerated," not allowing him to shower or otherwise conduct personal hygiene during the first eight days, and "cover[ing]" him with "CS gas particulate" causing pain and irritation to his eyes, skin, and lungs, not allowing him to use the phone during the first eight days, and not allowing him to request a kosher meal during the first eight days. (*Id.*) Plaintiff also says that on April 26, 2022, Defendant McCormick[3] and "Deputy White" "took all of [his] court documents" and did "not allow[ ]" him to attend a court appearance. (*Id.*) Plaintiff says he was placed in an "extremely cold" holding cell without food and water for approximately seven hours and that deputies lied to Defendant Judge McHenry[4] that he had "refused transport" to the hearing. (*Id.* at 9–10.)

Additionally, Plaintiff alleges that on April 30, 2022, he was "apprehended" and "attacked" by deputies and placed in a holding cell for approximately 15 hours without food. (*Id.* at 10.) According to Plaintiff, "Deputy Garcia" and Defendant McCormick then tackled Plaintiff and twisted his extremities when he reached for his t-shirt, which was outside his cell on the floor. (*Id.*) Plaintiff says he was shackled and placed in a cell on his stomach for two hours, and his documents were confiscated. (*Id.*) Plaintiff received "an in-house infraction of escape"

---

[3] Defendant McCormick is a CJC deputy.

[4] Defendant Judge McHenry is a State of Colorado Fourth Judicial District judge.

because of this incident. (*Id.*) He was also charged with escape by El Paso County. (Doc. No. 64-4.)

### Claim 2: Sixth Amendment Violation

Plaintiff next asserts a Sixth Amendment "rights of the accused" claim. (Doc. No. 48 at 10.) He alleges his right to counsel was "blatantly hindered" by Defendant Judge McHenry. (*Id.*) He says he was "not allowed to hire or fire" appointed counsel nor represent himself "without being subjected to claims of incompetency." (*Id.*) He also says Defendant Evans[5] failed to notify him of a March 11, 2022, video call with his attorney. (*Id.*) Plaintiff goes on to allege certain discovery he obtained was "taken by deputies" and that the state court denied certain discovery motions. (*Id.* at 10–11.) Finally, Plaintiff alleges Defendant Judge McHenry revoked his bond on June 28, 2022, without proper cause, placing Plaintiff back in custody for 70 days. (*Id.* at 11.) Plaintiff also complains that Defendant Judge McHenry found him incompetent and "tr[ied] to have me committed for inpatient treatment" without cause. (*Id.*)

### Claim 3: First Amendment Violation

Plaintiff next asserts a First Amendment claim.[6] (*Id.* at 12.) According to Plaintiff, CJC "prevented" him from practicing his religion "without retaliation or being targeted." (*Id.*) Plaintiff alleges his Bible was taken by CJC staff, Defendant Draper[7] assaulted him "for

---

[5] Defendant Evans is a CJC deputy.

[6] Plaintiff titles this claim, "Violation of Religious and Political Freedom/Freedom of Speech." However, based on the allegations, the Court construes it as a First Amendment Free Exercise claim.

[7] Defendant Draper is a CJC deputy.

practicing or observing" his religion on "several instances," and his kosher meals were "tainted," "stolen," "outdated," and "rancid." (*Id.*) Plaintiff further alleges he was denied a Passover meal and that he was served Passover wafers after witnessing deputies kick them across the floor. (*Id.*) Plaintiff claims to have lost over 45 pounds from February 10, 2022, to June 11, 2022. (*Id.*) Plaintiff says this "harsh treatment" is "condoned and trained" by Defendant Elder.[8] (*Id.*)

*Claim 4: Improper Classification*

Plaintiff next claims Defendant O'Neil[9] "improperly classified" him as requiring restrictive housing while he was at CJC in 2022. (*Id.* at 12–13 (explaining that restrictive housing involved "22–23 hour lockdown").) Plaintiff cites "House Bill 21-1211"[10] as the basis for this claim. (*Id.*) Plaintiff says he was moved to the "B1" unit on April 30, 2024, based on an infraction "fabricated" by Defendant Ravenkamp.[11] (*Id.* at 13.) According to Plaintiff, the "Bravo" housing blocks lack sheets, socks, and undergarments, and allow only limited contact with others. (*Id.*) Plaintiff says the restrictive housing "severely worsened" his PTSD. (*Id.*) The Court construes this claim as brought against Defendants O'Neil and Ravenkamp. *See supra* at 3.

*Claim 5: Colorado Constitution Art. II, Section 16 Violation*

---

[8] Defendant Elder was the El Paso County Sheriff until January 2023.

[9] According to Plaintiff Defendant O'Neil is the "Head of Classification" at CJC.

[10] As the El Paso County Defendants point out, House Bill 21-1211 has been codified at Colo. Rev. Stat. § 17-26-301 to 304. (Doc. No. 64 at 17.)

[11] According to Plaintiff Defendant Ravenkamp is the "Disciplinary Hearing Officer" at CJC.

Plaintiff next claims his rights as a criminal defendant under the Colorado Constitution have been violated. (*Id.*) Plaintiff says he has been "made to pay enormous cost in court fees" through "never ending battles with the judicial system." (*Id.*) He further alleges criminal charges have been brought against him outside of their statutes of limitation, and his speedy trial rights have been violated. (*Id.* at 13–14.) Plaintiff also alleges that in one case his attorney agreed to a plea offer without his "input[,] knowledge[,] or consent." (*Id.* at 14.) Moreover, Plaintiff complains about attempts to find him incompetent, hindrance of his attempts to represent himself or fire counsel, and extended pretrial detainment. (*Id.*) He alleges Defendant Allen[12] "has intentionally withheld exculpatory information," and that he has been subjected to unwarranted arrests. (*Id.* at 15.)

*Claim 6: Conspiracy to Violate Plaintiff's Civil Rights Under 42 U.S.C. § 1985*

Plaintiff next claims Defendant Reed—an EPSO Deputy and Plaintiff's ex-wife—has conducted a years-long conspiracy to interfere with his civil rights. (*Id.* at 15–17.) Plaintiff alleges he was the victim of a domestic attack by Defendant Reed in 2016, resulting in EPSO deputies coming to their shared home. (*Id.* at 15–16.) He then says that though he was the victim of the attack, Defendant Reed obtained a restraining order against him. (*Id.* at 16.) Further, Plaintiff claims he has been subjected to multiple restraining orders and been required to refrain from contact with Defendant Reed since 2016, all based on "unfounded allegations." (*Id.* at 16–17.) According to Plaintiff, Defendant Reed has "used [the] [EPSO] and [CJC] as a tool to destroy [his] way of life." (*Id.* at 17.)

---

[12] Defendant Allen is the District Attorney for Colorado's Fourth District.

*Claim 7: Use of Excessive Force by Defendant Draper*[13]

Plaintiff also alleges that on May 16, 2022, Defendant Draper brought a kosher lunch meal to his cell at CJC. (*Id.*) Plaintiff—frustrated the lunch was cold and missing certain food items—"tried to reject the cold meal by just laying it on the floor outside of [his] cell." (*Id.*) He alleges Defendant Draper grabbed the meal and tried to shove it back in the food tray door. (*Id.*) He says Defendant Draper then intentionally "slam[med]" and pinned the food tray door on Plaintiff's arm, causing Plaintiff to say, "you are trying to hurt me." (*Id.*) Plaintiff sustained "3 cuts and 3 bruises" from the incident. (*Id.*) Plaintiff was treated by CJC medical staff, who told him to wash the cuts with soap and water and declined to provide him with bandages. (*Id.* at 18.) The Court construes this claim as brought against Defendant Draper. *See supra* at 3.

*Claim 8: Fourth Amendment Violation*

Plaintiff next contends he was subjected to Fourth Amendment "search, seizure, arrest, and warrant violations," as well as an excessive use of force[14] to effectuate his arrest on February 10, 2022. (*Id.*) Plaintiff says EPSO SWAT deputies "shot up my home with lethal rounds ... and over 50 canisters of CS gas and a mustard colored gas," causing "extensive damage" and

---

[13] This claim is mistakenly labeled "claim 6" in the Amended Complaint. Based on this mistake, Plaintiff's eighth through tenth claims are also each mistakenly mis-labeled. The Court has edited these claims to the correct claim number throughout.

[14] Plaintiff appears to cite Colo. Rev. Stat. 18-8-803, a Colorado criminal statute, as the basis for his excessive force claim. However, because this criminal statute does not provide for a civil private right of action, the Court construes Plaintiff's claim as an excessive force claim under the Fourth Amendment. *See Cortez v. McCauley*, 478 F.3d 1108, 1125 (10th Cir. 2007) ("[A]ll claims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard.").

"significant emotional trauma." (*Id.*) Plaintiff says these actions were unwarranted as he posed

"no threat" to the deputies or himself. (*Id.*) Plaintiff further complains he was arrested without a

warrant and that a search warrant for the home, issued after his arrest, was "unlawful."[15] (*Id.* at

18–19.)

      *Claim 9: Speedy Trial Violation, Violation of Colorado Rules of Court and Court Procedures*

      Plaintiff next alleges various violations of his rights as a criminal defendant and litigant

in Colorado in connection with the restraining orders against him. (*Id.* at 21–22.) These

allegations are vague and difficult to follow, but he appears to contend that Defendant Magistrate

Judges Witkus and Parrot[16] acted improperly in issuing and enforcing the restraining orders. (*Id.*

at 22.) Plaintiff was arrested for allegedly violating the orders. (*Id.*) The Court construes this

claim as brought against Defendant Magistrate Judges Witkus and Parrot. *See supra* at 3.

      *Claim 10: Fraudulent Submission of Veterans Administration Form 27-0820e*

      Finally, Plaintiff claims Defendant Frahm[17] "falsified" a Veterans Administration ("VA")

form by incorrectly stating Plaintiff had been convicted of a felony, causing Plaintiff to lose his

VA benefits from April to August, 2023. (*Id.* at 23.) The Court construes this claim as brought

against Defendant Frahm. *See supra* at 3.

      *Remedies Requested*

---

[15] Plaintiff lists the Defendants who were allegedly at the scene of his arrest. (*See* Doc. No. 48 at 20–21.) He does not specifically describe the actions of any one Defendant.

[16] Defendants Witkus and Parrot are State of Colorado Fourth Judicial District magistrate judges.

[17] Defendant Frahm appears to be a CJC staff member.

Plaintiff seeks $450,000,000 in damages. (*Id.* at 25.) He further requests a "formal apology" from Defendant Elder, "reprimand[s]" of EPSO deputies," and a "review" of his cases before Defendant Judges McHenry, Witkus, and Parrot. (*Id.*)

## II.    El Paso County Defendants' Motion[18]

In their Motion, the El Paso County Defendants argue the Court should abstain from hearing this case based on the *Younger* and *Rooker-Feldman* doctrines. (Doc. No. 64 at 7–10.) Alternatively, Defendants argue Plaintiff has failed to state any claims for relief under Fed. R. Civ. P. 12(b)(6). (*Id.* at 10–18.)

## LEGAL STANDARD

## I.    Federal Rule of Civil Procedure 12(b)(1)

---

[18] In their Motion, Defendants' reference various court files and docket entries. They are publicly filed documents and bear on the disposition of this case. *See U.S. v. Pursley*, 577 F.3d 1204, 1214 n.6 (10th Cir. 2009) (citation omitted) (taking judicial notice of court documents that directly bear on the disposition of a case). Plaintiff seems to challenge the use of certain court records. (Doc. No. 71 at 2 (stating, "[t]he court records are not submitted to the standards of CRS 16-1-108 ... which means they are fraudulent documents .... These are not official records and documents"). However, the Court does not see a legitimate basis for questioning their authenticity and therefore takes judicial notice of the publicly filed documents. *See Marotta v. Cooper*, No. 10-CV-01687-WJM-CBS, 2011 WL 2784423, at *2 (D. Colo. July 13, 2011), *report and recommendation adopted*, No. 10-CV-01687-WJM-CBS, 2012 WL 255798 (D. Colo. Jan. 27, 2012) ("On a motion to dismiss pursuant to Rule 12(b)(6), the court may consider materials in addition to the pleadings if such materials are public records or are otherwise appropriate for the taking of judicial notice. Such items include orders, items appearing in the court record, and records filed in state court."); The documents depict the following relevant background: On January 25, 2022, an EPSO Deputy applied for and received an arrest warrant for Plaintiff in a menacing case. (Doc. No. 64-1 at 3.) Plaintiff was arrested on February 1, 2022. (Doc. No. 48 at 19.) He was released on bond on February 4, 2022. (Doc. No. 64-1 at 3.) On February 9, Plaintiff failed to appear in court. (*Id.*) The court issued a bench warrant. (*Id.*) Plaintiff was arrested by an EPSO SWAT team at his home on February 10, 2022. (*See* Doc. Nos. 64-2; 64-3.)

Federal courts are courts of limited jurisdiction and, as such, "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *The Wilderness Soc. v. Kane Cty., Utah*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring). Indeed, courts have an independent obligation to determine whether subject matter jurisdiction exists, *Cellport Sys., Inc. v. Peiker Acustic GMBH & Co. KG*, 762 F.3d 1016, 1029 (10th Cir. 2014), even in the absence of a challenge from any party, *1mage Software, Inc. v. Reynolds & Reynolds, Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006). Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may bring either a facial or factual attack on subject matter jurisdiction, and a court must dismiss a complaint if it lacks subject matter jurisdiction. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1147 n.4 (10th Cir. 2015). For a facial attack, a court takes the allegations in the Complaint as true; for a factual attack, a court may not presume the truthfulness of the Complaint's factual allegations and may consider affidavits or other documents to resolve jurisdictional facts. *Rural Water Dist. No. 2 v. City of Glenpool*, 698 F.3d 1270, 1272 n.1 (10th Cir. 2012) (citing *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995)). The burden of establishing jurisdiction rests with the party asserting jurisdiction. *See Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017).

## II.    Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 at 1109. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a Rule 12(b)(6) motion to dismiss, means that the plaintiff pleaded facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," *i.e.*, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, the claim survives the motion to dismiss. *Id*. at 679.

## III.     *Pro Se* Plaintiff

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding the allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim

upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (stating that a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). Plaintiff's *pro se* status does not entitle him to an application of different rules. *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## ANALYSIS

Defendants argue the Court lacks jurisdiction over Plaintiff's claims based on the *Younger* abstention doctrine and the *Rooker-Feldman* doctrine. They also argue failure to state a claim pursuant to Rule 12(b)(6). The Court addresses the *Younger* and *Rooker-Feldman* arguments first, then it turns to the 12(b)(6) challenge.

## I.    *Younger* Abstention (Claims 1, 2, 5, 8, 9)

The *Younger* abstention doctrine—which is based on principles of federalism, comity, and respect for state functions—precludes federal courts from interfering with state court proceedings, absent extraordinary circumstances. *Younger v. Harris*, 401 U.S. 37, 45 (1971); *Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997). Specifically, the *Younger* abstention doctrine requires a federal court to decline jurisdiction[19] where: "(1) there is an ongoing state

---

[19] Although the *Younger* abstention doctrine is often referred to as a "jurisdictional" issue, technically speaking, "*Younger* is a doctrine of abstention." *D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1230 n.8 (10th Cir. 2013) ("[T]he federal district court suggested

criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies." *Chapman v. Oklahoma*, 472 F.3d 747, 749 (10th Cir. 2006) (citing *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003)) (quotation marks omitted). "*Younger* abstention is non-discretionary; it must be invoked once the three conditions are met, absent extraordinary circumstances." *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999) (citing *Seneca-Cayuga Tribe of Okla. v. State of Okla. ex rel. Thompson*, 874 F.2d 709, 711 (10th Cir. 1989)). The doctrine applies regardless of whether the plaintiff seeks declaratory, injunctive, or monetary relief. *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228 (10th Cir. 2004); *see also id.* ("The rationale for *Younger* abstention can be satisfied, however, by just staying proceedings on the federal damages claim until the state proceeding is final.").

The Court considers, first, whether there is an ongoing state proceeding of the type *Younger* is intended to address. *Chapman*, 472 F.3d at 749. Three types of proceedings meet this definition: (1) "ongoing state criminal prosecutions[;]" (2) "civil enforcement proceedings[;]" and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69,

---

that the *Younger* doctrine is jurisdictional. This is not precisely correct.") (internal citation omitted). "*Younger* 'neither provides a basis for nor destroys federal jurisdiction, [but] it does determine when the federal courts must refrain from exercising jurisdiction.'" *Chapman v. Barcus*, 372 F. App'x 899, 901 n.1 (10th Cir. 2010) (quoting *Canatella v. California*, 404 F.3d 1106, 1113 (9th Cir. 2005)). The "salient point" is that the Court must determine whether *Younger* abstention is required before it may address the merits of the case. *Goings v. Sumner Cnty. Dist. Att'ys Office*, 571 F. App'x 634, 639 n.4 (10th Cir. 2014).

78 (2013) (citations and internal quotation marks omitted). Here, the first prong is met because

Plaintiff's claims relate to two criminal cases pending in state court:[20]

> *People v. Reed*, No. 22CR459: in which Plaintiff is charged with menacing, and
> which is connected to his February 1, 2022, and February 10, 2022 arrests; and

> *People v. Reed*, No. 22CR2779: in which Plaintiff is charged with the escape
> connected to Plaintiff's Claim One, described above.

The second prong in *Younger* is also satisfied because Plaintiff fails to put forward any reason

demonstrating the state criminal proceedings are an inadequate forum to hear related claims. *See*

*Goings v. Sumner Cnty. Dist. Attorney's Off*., 571 F. App'x 634, 638 (10th Cir. 2014) (noting

that a plaintiff must "clearly show that [he] could not have raised [his] claims during the [state

court] proceedings in order to defeat *Younger*'s second requirement" (internal quotation

omitted)). Moreover, the third *Younger* prong is met because the related matters are criminal

proceedings and the Supreme Court "has recognized that the States' interest in administering

their criminal justice systems free from federal interference is one of the most powerful of the

considerations that should influence a court considering equitable types of relief." *Kelly v.

Robinson*, 479 U.S. 36, 49 (1986).

Being satisfied that *Younger* can apply under these circumstances, the Court next

considers whether any of Plaintiff's claims would interfere with the state court's ability to

conduct its proceedings. *Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th

Cir. 2002) (citations omitted) ("*Younger* governs whenever the requested relief would interfere

with the state court's ability to conduct proceedings, regardless of whether the relief targets the

---

[20] The Court's review of the Colorado Judicial Branch docket search tool indicated these cases
remain pending and are scheduled for a competency review hearing on August 20, 2024. *Docket
Search*, COLORADO JUDICIAL BRANCH, https://www.coloradojudicial.gov/dockets.

conduct of a proceeding directly."). Here, the Court finds Plaintiff's first, second, fifth, eighth, and ninth claims are subject to *Younger* abstention.

## A. Claims 2, 5, 9

In his second, fifth, and ninth claims, Plaintiff alleges that various Defendants (Judges McHenry, Witkus, and Parrot, and Defendant Allen) have hindered his ability to defend against the criminal charges. He further contends his right to a speedy trial has been violated. Those claims are directly connected with the ongoing criminal proceedings. To the extent he has concerns about the fairness of those proceedings, the ongoing criminal proceeding in state court is currently the adequate forum for resolution. *See Goings v. Sumner Cnty. Dist. Attorney's Off.*, 571 F. App'x 634, 638 (10th Cir. 2014) ("[I]t is beyond cavil that a state court is an adequate forum for the resolution of challenges to distinctly state prosecutorial or court procedures or processes, which are the kind of procedures or processes that were directly at issue in Mr. Goings's claims.").

## B. Claim 8

Similarly, claim eight is connected to a pending criminal action because Plaintiff challenges the constitutionality of his arrest and the search of his home in connection with such action. *See People v. Reed*, No. 22CR459. Plaintiff will have an opportunity to challenge the legality of his arrest and the subsequent search under the Fourth Amendment during said proceedings. *See Kugler v. Helfant*, 421 U.S. 117, 125 (1975) (noting that "ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights").

## C. Claim 1

Abstention is also appropriate as to Plaintiff's first claim for Eighth Amendment violations. Plaintiff complains his bond was set excessively high by the state court. And while the bond hearing is concluded, it is related to an ongoing prosecution, meaning Plaintiff continues to have an opportunity to challenge the various aspects of his criminal case. *See Mounkes v. Conklin*, 922 F. Supp. 1501, 1512 (D. Kan. 1996) ("The bail bond proceedings here are very much a part of the underlying criminal cases."); *Moreno v. Colorado*, 2018 WL 10436296, at *3 (D. Colo. June 18, 2018) ("[T]hroughout the pendency of a criminal case, a state court may reconsider or modify its bail bond determination.").

The Eighth Amendment claim also relates to the April 30, 2022, incident at CJC during which Plaintiff was allegedly attacked by deputies, held without food, shackled, and had his documents confiscated. (Doc. No. 48 at 10.) But Plaintiff is currently charged with escape in connection with that very incident. (*See* Doc. No. 64-4); *see also People v. Reed*, No. 22CR2779. And while some of Plaintiff's Eighth Amendment allegations concern treatment at CJC during his first eight days—and are therefore not directly related to the underlying criminal proceedings—Plaintiff appears to combine *all* of the allegations into a single "cruel and unusual punishment" claim. (*See* Doc. No. 48 at 8 ("Upon entry into [CJC] on February 10, 2022, my civil rights regrading bail were violated. I was treated with deliberate indifference as I was harassed constantly as well as deprived of my human rights Intentional disregard of substantial safety, medical emergencies and physical attacks were conducted by [CJC staff].").) Thus, the Court recommends abstaining from the claim in its entirety because it is supported by at least some allegations that are directly intertwined with pending state court proceedings.

\*\*\*

17

As noted above, *Younger* applies regardless of whether the plaintiff seeks declaratory, injunctive, or monetary relief. *See generally D.L.*, 392 F.3d at 1228. However, the Tenth Circuit has instructed that the appropriate course for claims seeking monetary relief is to stay proceedings, while claims seeking equitable relief, should be dismissed. *See Chapman v. Barcus*, 372 F. App'x 899, 902 (10th Cir. 2010) ("[W]e conclude that the district court was compelled to abstain from exercising its jurisdiction over [the plaintiff's] claims for injunctive or declaratory relief and those claims should have been dismissed without prejudice. As for his damages claims, '[t]he rationale for *Younger* abstention can be satisfied ... by just staying proceedings ... until the state proceeding is final.'" (quoting *D.L* 392 F.3d at 1228)); *see also Deakins v. Monaghan,* 484 U.S. 193, 202 (1988) ("[T]he District Court has no discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceeding"). Thus, the Court makes two separate recommendations in connection with Plaintiff's first, second, fifth, eighth, and ninth claims. First, to the extent Plaintiff seeks injunctive relief on those claims, the Court recommends dismissal without prejudice. Second, to the extent Plaintiff seeks monetary damages on those claims, the Court recommends they be stayed until the state criminal proceedings are final.

## II.    The *Rooker-Feldman* Doctrine (Claim 6)

"The *Rooker-Feldman* doctrine provides that only the Supreme Court has jurisdiction to hear appeals from final state court judgments." *Mayotte v. U.S. Bank Nat'l Ass'n*, 880 F.3d 1169, 1173 (10th Cir. 2018) (quoting *Bear v. Patton*, 451 F.3d 639, 641 (10th Cir. 2006)) (alteration omitted); *see also Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923). The doctrine prevents lower federal courts from exercising jurisdiction "over cases brought by 'state-court losers' challenging

'state-court judgments rendered before the [federal] district court proceedings commenced.'"
*Lance v. Dennis*, 546 U.S. 459, 460 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The doctrine applies to claims where "(1) the plaintiff lost in state court, (2) the state court judgment caused the plaintiff's injuries, (3) the state court rendered judgment before the plaintiff filed the federal claim, and (4) the plaintiff is asking the district court to review and reject the state court judgment." *Bruce v. City & Cnty. of Denver*, 57 F.4th 738, 746 (10th Cir. 2023) (citing *Exxon Mobil*, 544 U.S. at 284). "Where these factors exist, [a federal district court] lack[s] subject matter jurisdiction." *Id.* (citing *Lance*, 546 U.S. at 465).

The *Rooker-Feldman* doctrine precludes claims "actually decided by a state court," as well as claims "inextricably intertwined with a prior state-court judgment." *Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017) (quoting *Tal v. Hogan*, 453 F.3d 1244, 1256 (10th Cir. 2006)). "A claim is inextricably intertwined if the state-court judgment *caused*, actually and proximately, the *injury* for which the federal-court plaintiff seeks *redress*." *Tal*, 453 F.3d at 1256 (internal quotation marks and citation omitted) (emphasis in original).

*Rooker-Feldman* bars Plaintiff's sixth claim. Plaintiff alleges Defendant Reed engaged in a conspiracy with unnamed Defendants or third parties to violate his rights by obtaining restraining orders against him, orders which Plaintiff has violated, leading to criminal prosecutions. (Doc. No. 48 at 15–17.) Plaintiff contends these restraining orders were issued based on "unfounded allegations." (*Id.*) In other words, Plaintiff appears to ask the Court to weigh in on or review the reasoning and validity of the state court-issued restraining orders. However, as noted, under *Rooker-Feldman*, the Court cannot act as a *de facto* appellate court for someone who is dissatisfied with the decision of a state court. Any relief on Plaintiff's sixth

claim would necessarily be that—a review of a state court's decision to determine whether the allegations were—as Plaintiff claims—unfounded. [21] Accordingly, the Court recommends this claim be dismissed without prejudice for lack of subject matter jurisdiction. *See Strozier v. Potter*, 71 F. App'x 802, 804 (10th Cir. 2003) ("A district court's dismissal for lack of subject matter jurisdiction should be without prejudice.").

## III.    Fed. R. Civ. P. 12(b)(6) (Claims 3, 4, 7, 10)

Plaintiff's remaining claims are analyzed under the Rule 12(b)(6) standard. The Court also briefly considers whether municipal liability can attach to any of these claims. (*See* Doc. No. 48 at 2–7 (noting each Defendant is sued in their individual and official capacities).)

### A.  Claim 3: First Amendment–Free Exercise

In claim three, Plaintiff contends his First Amendment free exercise rights were violated while at CJC. Plaintiff says CJC staff has taken his Bible, refused to serve him a Passover meal, and has served him tainted," "stolen," "outdated," and "rancid" kosher meals. (Doc. No. 48 at 12.) He further alleges Defendant Draper assaulted him "for practicing or observing" his religion on "several instances." (*Id.*)

To state an individual capacity claim, "liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th

---

[21] The allegations in claim six are vague and somewhat confusing. It is unclear whether any part of claim six is based on something other than the restraining orders. Plaintiff's briefing does not address this issue. However, the Court notes that even assuming certain portions of claim six are unrelated to the restraining orders, and thus not barred by *Rooker-Feldman*, the Court would recommend dismissal of the claim under Rule 12(b)(6) because Plaintiff's allegations fail to state a claim for relief. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) ("[A] complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face."). Thus, the Court recommends dismissing the entirety of claim six.

Cir. 1997). "[A] complaint must explain what each defendant did to [the plaintiff], when the defendant did it, how the defendant's actions harmed him or her, and what specific legal right the plaintiff believes the defendant violated" to state a claim. *Robbins*, 519 F.3d at 1250. Here, however, the vast majority of Plaintiff's allegations concern unidentified CJC staff. With the exception of Plaintiff's allegations against Defendant Draper, Plaintiff does not identify any specific actions taken by any specific Defendant. Thus, the Amended Complaint fails to allege personal participation in a constitutional violation by any Defendant, other than Defendant Draper.

Moreover, Plaintiff's allegations against Defendant Draper are too vague and conclusory to state a claim for relief against him. The entirety of the allegations against Defendant Draper are as follows: "On several instances Deputy Draper has retaliated and assaulted me for practicing or observing details of my religi[ous] beliefs." (Doc. No. 48 at 12.) This allegation identifies the who, but fails to provide any meaningful insight into the "what, where, when, or how" of the claim. *See Iqbal*, 556 U.S. at 678 (saying that "naked assertion[s] devoid of further factual enhancement" are insufficient (quotation marks omitted)). However, because Plaintiff could theoretically offer additional allegations concerning Defendant Draper's alleged "retaliation," the Court recommends that claim three against Defendant Draper in his individual capacity, be dismissed without prejudice.

**B. Claim 4: Improper Classification**

In claim four, Plaintiff contends Defendant O'Neil violated "House Bill 21-1211"— codified at Colo. Rev. Stat. § 17-26-301 – 304—by placing him in restrictive housing while he was at CJC in 2022. Section 17-26-303 forbids "local jails" from placing "an individual in

restrictive housing, including for disciplinary reasons, if the individual meets" certain conditions, including being "diagnosed with a serious mental illness." Colo. Rev. Stat. § 17-26-303(1)(a). However, the Court agrees with Defendants that Plaintiff has not pointed to (nor has the Court found), any express or implied civil cause of action created by the statutory scheme. *See Hurtado v. Brady*, 165 P.3d 871, 876 (Colo. App. 2007) ("Where a statute does not provide for a private cause of action, a plaintiff may not pursue a claim for relief based upon the statute."); *Macurdy v. Faure*, 176 P.3d 880, 882 (Colo. App. 2007) ("An implied private right of action will not be inferred in a statute unless a clear legislative intent to create such a cause of action can be discerned."). Accordingly, the Court recommends this claim be dismissed with prejudice.

## C. Claim 7: Fourteenth Amendment – Use of Excessive Force

Plaintiff's seventh claim alleges a May 16, 2022, incident in which Plaintiff "tried to reject" a cold lunch brought to his cell and was then subjected to excessive force by Defendant Draper, who "slam[med]" and pinned the food tray door on Plaintiff's arm as he tried to shove the lunch back in Plaintiff's cell, causing "3 cuts and 3 bruises." (Doc. No. 48 at 17–18.)

"An excessive force claim under the Fourteenth Amendment targets arbitrary governmental action, taken without due process." *Estate of Booker v. Gomez*, 745 F.3d 405, 423 (10th Cir. 2014); *see* U.S. Const. amend. XIV ("No State shall ... deprive any person of life, liberty, or property, without due process of law."). To succeed on such a claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015); *see also Strain v. Regalado*, 977 F.3d 984, 991 (10th Cir. 2020) (explaining that "pretrial detainees should receive greater protection against excessive force than convicted inmates because the government lacks

the same legitimate penological interest in punishing those not yet convicted of a

crime"). "[O]bjective reasonableness turns on the facts and circumstances of each particular

case," and appropriate considerations include: "the relationship between the need for the use of

force and the amount of force used; the extent of the plaintiff's injury; any effort made by the

officer to temper or to limit the amount of force; the severity of the security problem at issue; the

threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."

*Kingsley*, 576 U.S. at 397 (internal quotation omitted). Special consideration must also be given

to the "legitimate interests that stem from the government's need to manage the facility in which

the individual is detained, appropriately deferring to policies and practices that in the judgment

of jail officials are needed to preserve internal order and discipline and to maintain institutional

security." *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)) (alterations and internal

quotation marks omitted).

Plaintiff's allegations fall short of supporting a Fourteenth Amendment excessive force

claim against Defendant Draper. This is because—even accepting all of Plaintiff's allegations as

true—the force was not objectively unreasonable. In *Schabow v. Steggs*, Judge Jackson

dismissed a similar claim. 2018 WL 1557257 (D. Colo. Mar. 30, 2018). There, like here, plaintiff

rejected food through the tray slot. *See id.* at * 5 ("[P]laintiff admits in his complaint ... he had

already thrown juice at another deputy through the tray slot."). Further, as here, the *Schabow*

plaintiff suffered only minor injuries from the incident. *See id.* ("[M]ere bruising, when

considered in light of the totality of the circumstances, is not enough injury to show that

defendant Steggs's decision to kick the tray slot closed was [not] "objectively reasonable."); *see*

*also id.* ("Had plaintiff suffered broken bones in his hands, for example, it would be easier to

find that plaintiff's complaint sufficiently pled a constitutional harm."). Judge Jackson dismissed

the excessive force claim, finding the plaintiff had failed "to show a constitutional violation." *Id.*

So too here. Based on Plaintiff's own description of his actions, Defendant's Draper's

response, Plaintiff's minor injuries, and the CJC's need to maintain order and safety, the Court

finds the Amended Complaint fails to sufficiently allege Defendant Draper's actions were

"objectively unreasonable."[22] *See Marshall v. Milyard*, 415 Fed.Appx. 850, 853 (10th Cir. 2011)

(finding pushing a cubicle-cell wall into a prisoner but only causing bruises is not enough to

constitute a constitutional violation). Accordingly, the Court recommends dismissing this claim

with prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A

dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule

12(b)(6) and granting leave to amend would be futile.").

### D.  Claim 10: Fraudulent Submission of Veterans Administration Form 27-0820e

In claim ten, Plaintiff alleges Defendant Frahm "falsified" a Veterans Administration

("VA") form by incorrectly stating Plaintiff had been convicted of a felony, thereby causing

Plaintiff to lose his VA benefits from April to August 2023. Plaintiff claims Defendant Frahm

violated 42 U.S.C. § 1985 (Conspiracy to interfere with civil rights). However, Plaintiff's claim

is devoid of any factual allegations plausibly establishing Defendant Frahm was engaged in a

conspiracy to violate his civil rights. Indeed, the only allegation against Defendant Frahm is that

she "purposefully" intended to "cause hardship" by incorrectly filing out the VA form without

---

[22] The Court notes Defendant Draper also asserts qualified immunity as to this claim. However, because the Court finds Defendant Draper's actions do not rise to the level of a constitutional violation, the Court need not determine whether the "clearly established right" prong of the qualified immunity test is met.

providing any detail explaining this vague allegation. (Doc. No. 48 at 23.) And most notably, Plaintiff does not allege who Defendant Frahm conspired with. *See* 42 U.S.C. § 1985 (requiring "two or more persons" to "conspire" to state a claim for relief). Such deficient pleading cannot withstand a Rule 12(b)(6) challenge. *See Iqbal*, 556 U.S. at 678 (saying legations which are legal conclusions, bare assertions, or merely conclusory "are not entitled to the assumption of truth."). The Court recommends this claim be dismissed with prejudice.

### E.  Municipal Liability as to Claims 3, 4, 7, and 10

All Defendants are sued in their individual and official capacities. "A claim against a state actor in his official capacity 'is essentially another way of pleading an action against the county or municipality' and is considered under the standard applicable to Section 1983 claims against municipalities or counties." *Cano v. Denning*, 2013 WL 322112, at *5 (D. Kan. Jan. 28, 2013) (quoting *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010)); *see Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation of federal law." (internal quotation marks omitted)). Under *Monell v. Dept. of Soc. Servs. Of City of N.Y.*, a plaintiff who brings claims against a municipality must establish: (1) a constitutional violation by a municipal employee, (2) the existence of a municipal custom or policy, and (3) a direct causal link between the custom or policy and the violation alleged. 436 U.S. 658, 694 (1978).

Plaintiff's allegations are insufficient to establish any of the three *Monell* prongs. As noted above, Plaintiff has failed to plausibly allege a constitutional violation in Claims 3, 4, 7, and 10. This alone sinks the related municipal liability claims. Further, and even assuming the

Court *did* find Plaintiff sufficiently plead a constitutional violation, the Amended Complaint

does not allege a custom or policy of the kind required for *Monell* liability.[23]

## CONCLUSION

For the foregoing reasons the Court **RECOMMENDS** the El Paso County Defendants'

Motion to Dismiss Plaintiff's Amended Complaint. (Doc. No. 64) be **GRANTED,**

recommending that the court:

1. apply *Younger* abstention to Plaintiff's first, second, fifth, eighth, and ninth claims, dismissing without prejudice the claims insofar as Plaintiff seeks equitable or injunctive relief and staying any adjudication of these claims insofar as Plaintiff seeks monetary damages; and

2. apply *Rooker* to dismiss Plaintiff's sixth claim without prejudice; and

3. dismiss Plaintiff's third individual and official capacity claims without prejudice; and

4. dismiss Plaintiff's fourth, seventh, and tenth individual and official capacity claims, with prejudice.

The Clerk of Court is directed to a mail a copy of this Recommendation to Plaintiff:

Andre' Dwayne Reed, Sr.
##A0337523
El Paso County Criminal Justice Center
2739 East Las Vegas Street
Colorado Springs, CO 80906

---

[23] The Court recommends that Plaintiff's official capacity (*Monell*) claims related to claims four, seven, and ten be dismissed with prejudice, consistent with the recommendation to dismiss the corresponding individual capacity claims with prejudice. However, the Court recommends that Plaintiff's official capacity claim associated with claim three be dismissed without prejudice, in line with the recommendation to dismiss the underlying individual capacity claim without prejudice.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal

the magistrate judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 19th day of August, 2024.

_____
Maritza Dominguez Braswell
United States Magistrate Judge